

FEE NOT PAID

FILED

2015 FEB -6 AM 10: 20

CHRISTOPHER M. DETORO
U.S. BANKRUPTCY COURT
N. DISTRICT OF INDIANA

# UNITED STATES BANKRUPTCY COURT
## Northern District of Indiana
### South Bend Division

| | |
|---|---|
| In Re: Debtor(s) (name(s) and address)<br>Todd Delrae Zimmerman<br>xxx-xx-5041<br>51900 Lake Knoll Ct.<br>Granger, IN 46530 | )<br>)<br>)<br>) Case Number: 10-34224-HCD<br>)<br>)<br>) Chapter 13/dlh<br>) |

---

## COMPLAINT OF CREDITOR, CHAD R. BALDWIN, TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. S/S 523.
### (w/ Exhibits and Jury Demand)

---

Now comes Creditor, Chad R. Baldwin, acting *pro se,* who hereby respectfully files this

"*Complaint to Determine Dischargeability of Debt Under 11 U.S.C. s/s 523",* in timely response

to this Court's Order of 1/12/15. Creditor further respectfully requests a jury trial on this matter.

## BACKGROUND FACTS

1) Creditor filed a civil lawsuit against Debtor in Orange County, Florida for his *economic*

   *losses* owed of $287,100 for back wages, profit sharing and business reimbursements on

   4/28/14 in case no. 2014-CA-4365. (Please see attached "EXHIBIT A", with *"page 11,*

   *paragraph 52"* outlining this $287,100, with said lawsuit including the business

   contract...etc., attached in exhibits.)

2) Debtor was served ***twice (2x)*** by the Sheriff on this lawsuit and *never* filed an "Answer"

   to the Florida Court in response to the lawsuit to deny the $287,100 was owed, thus

   deeming this *debt is valid and deserving to Creditor.*

3) Debtor did however acknowledge to Creditor in writing on 6/24/14, (which has already

   been filed with this Court by Creditor and is in the record), that of the $210,221 in gross

1

sales their first 9 weeks ending 5/19/07, FTG netted $130,000 after cancelations and refunds, with Creditor deserving to $13,172.09 as his 50% profit sharing *(a 10% valuation of net sales by Debtor himself)* and offered Creditor $10,000 to settle, which Creditor refused as Creditor is still deserving to his week 9 payroll, business reimbursements and 50% profit sharing on *all* Florida sales after week 9 of 5/19/07, plus interest, court costs, liquidated/punitive damages...etc.

4) Creditor's lawsuit claimed he was owed $250,000 in profit sharing from over $2,000,000 of his net sales provided from 5/19/07 thru 2009. Debtor himself has now agreed that a *"10% valuation is deserving to Creditor for his 50% profit sharing from net sales"*, so now using ***Debtor's own 10% valuation***, this reduces Creditor's profit sharing owed from $250,000 to ***$200,000*** for his net sales made ***after 5/19/07***.

5) Further, Debtor has denied that Creditor is deserving to $25,000 in profit sharing as Creditor claimed in his lawsuit for the first 9 weeks ***up to 5/19/07***, but again did agree that Creditor was deserving to ***$13,172.09*** instead.

6) Creditor now revises his damages owed, *by using the Debtor's own 10% valuation*, to ***$213,172.09*** in profit sharing from Creditor's sales, plus Creditor's week 9 payroll still owed of ***$2,004.25***, as Debtor has agreed in writing on 6/24/14 the net sales were $20,042.50 for week 9, with another ***$10,000*** for Creditor's business expenses owed, resulting in a new figure of ***$225,176.34*** versus the $287,100 as claimed in case no. 2014-CA-4365.

7) Creditor then unfortunately "erred" by informing Debtor that he was going to file for "Summary Judgment" as a result of Debtor's failure to file an "Answer" with the Court in case no. 2014-CA-4365.

2

8) Debtor then immediately "*blocked*" Creditor's filing of his "motion for summary judgment" by including Creditor's lawsuit into Debtor's Bankruptcy, *four (4) years after his bankruptcy was filed*, thus Creditor is no longer able to pursue his civil complaint, as this Bankruptcy Court has now obtained jurisdiction. (Please see docketing statement attached as "EXHIBIT B", specifically the dates of 10/28/14 and 10/30/14 in Creditor's lawsuit case no. 2014-CA-4365 where Debtor filed for bankruptcy protection.)

9) Creditor, acting *pro se*, has been advised that "*This Court's recent 1/12/15 Order which granted Debtor's motion to add Creditor's lawsuit into Debtor's bankruptcy now denies Creditor to his liquidated damages, punitive damages, interest, attorney fees, court costs...etc. sought in his civil lawsuit on pg 13, totaling over one million dollars ($1,000,000),* which is over and above the $225,176.34 in economic losses of Creditor as now revised.

10) Debtor is getting off easy by not having to pay Creditor the additional $1,000,000 in damages by including this debt into his bankruptcy, only now having to pay Creditor his economic losses of $225,176.34, as is now understood by *pro se* Creditor. This Court has just *saved* Debtor $1,000,000 in additional damages, with Creditor now deserving to his remaining economic losses of $225,176.34, *plus another $300,000 as outlined below*, resulting in a total economic loss of *$525,176.34* to Creditor.

11) Creditor has also been advised that "*while Debtor is deserving of criminal charges here, it would be extremely difficult for Creditor to collect his $525,126+ if Debtor is sitting in prison for the next 15 years*", thus Creditor is reluctant to file criminal charges in order to collect from Debtor, but reserves the right to file such criminal charges in the future.

Case 15-03006-hcd    Doc 1    Filed 02/06/15    Page 3 of 54

12) Debtor has failed to file *anything* with: 1) the US Tax Court docket no. 16781-10, 2) the Florida Court case no. 2014-CA-4365, or 3) this Court, *to dispute that this debt to Creditor is valid*, with Creditor having made *numerous* filings to all **three (3) Courts** to date and Creditor has been *unchallenged* by Debtor that he has committed "*fraud, embezzlement or larceny*" in not paying Creditor.

13) Creditor prays that Debtor's $525,176.34 debt now be *paid in full* under 11 U.S.C. s/s 523(a)(4) which states: **"Exceptions to discharge" - (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt- (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."** (This has been previously argued by Creditor to this Court.)

14) Creditor, in the interest of Judicial Economy of not having to re-submit the same voluminous information here again, includes all of his previous filings and exhibits already submitted to this Court as if being fully re-written herein or attached hereto as exhibits to support this *"fraud, embezzlement or larceny"* of Debtor. (Please review the previous filings of Creditor made with this Court for "clarification" on these issues. Creditor further includes the fact that Debtor has failed to deny his *"fraud, embezzlement or larceny"* with the US Tax Court and the Florida Court, ***thus admitting to such by his failure to timely file an 'answer'.)***

15) Creditor has won his US Tax Court case, (please see 'Exhibit F' in Creditor's lawsuit case no. 2014-CA-4365 attached hereto as "EXHIBIT A") and is now also deserving to *summary judgment* in lawsuit case no. 2014-CA-4365 due to Debtor's failure to timely file an "Answer" with the Florida Court, with Creditor now praying this Court to follow suit with a *sua sponte* granting in favor of Creditor for $525,176.34 in this instant matter.

4

16) In further support is attached "EXHIBIT C", being the FTG April 2007 bank statement mailed to Creditor's mailing address in Orlando, Florida. This is when Creditor complained to Debtor for Debtor's non-FTG expenses being paid from this account and Debtor then *changed the mailing address* to his residence in Granger, Indiana in order to keep Creditor from reviewing where his 50% of FTG monies was being spent by Debtor. (The FTG bank statements for May 2007 and later have already been submitted to this Court and are in the record, thus confirming this change of address in Debtor's attempts to *defraud* Creditor.)

17) Debtor, to further his *fraud*, then also changed FTG's bank deposits to be instead deposited into Debtor's personal Toledo, Ohio "Zman Enterprises" bank account, *embezzling and comingling FTG funds*, and informed Creditor "*that the credit card processor had seized and stolen FTG's funds of $100,000+*", when Debtor just simply had those funds deposited elsewhere. (The 'Zman Enterprises' bank statements for May 2007 and later have already been submitted to this Court and are in the record as well.)

18) FTG had over $210,000 in sales their first 9 weeks and a quick review of the FTG bank account statements for April, May and June 2007 only shows $41,194 in deposits. (There was also approximately $10,000 deposited in March 2007.) ***There is $159,000 missing in FTG deposits.*** This supports Debtor's claim that over $100,000 of FTG funds was *seized* by his credit card processor with Debtor furthering his fraud by supplying the 2007 FTG's bank statements to Creditor to prove their FTG business was "broke", with Debtor unable to pay Creditor as such. Please review the remaining FTG bank statements for 2007 which shows FTG had minimal funds available, less than $500, with numerous expenses charged by Debtor for his "***food, booze and golf***", while Creditor was

5

still patiently waiting on his week 9 payroll, profit sharing, business expense reimbursements...etc.

19) However, when reviewing the Debtor's 'Zman Enterprises' bank account statements for May and June 2007, that account clearly *__shows $159,789 in deposits__*. This proves beyond any doubt that the missing $159,000 in FTG deposits were simply *embezzled* by Debtor and redirected into his 'Zman Enterprises' bank account to *defraud* Creditor.

20) Further, when Debtor and Creditor opened FTG in Florida they had obtained 100% of the rights to sell FLP's service in the State of Florida from Matt Williams and his partner Robert Cohen. (This is where the other $300,000 in damages comes in.)

21) After Debtor claimed his FTG credit card machines were shut down on 5/19/07 for processing "*too much business*", Debtor then brought in the credit card machines of FLP, Matt Williams and Rob Cohen to assist him "*while trying to reinstate his FTG credit card machines*", as Creditor was informed by Debtor, with FLP using "Fair Finance" to process these future sales of Creditor.

22) Creditor was bringing in over $70,000 per week in his Florida sales at this point when Creditor discovered FLP had opened a *second* sales crew in Florida, *without Creditor's knowledge or consent*, thereby stealing Creditor's Florida clients and depriving Creditor of his 50% profit sharing on over $3,000,000 in net sales from this *second* Florida sales crew from *2007 thru 2010*, which is an *__additional $300,000 in profit sharing__* deserving to Creditor on top of the $225,176.34 as previously outlined, again using Debtor's own 10% valuation for profit sharing deserving to Creditor from net sales.

6

23) Debtor claimed he had "*no knowledge or involvement*" with this *second* sales crew in

Florida and further ***refused*** to have FLP remove this *second* sales crew from the

Creditor's and Debtor's 100% owned Florida territory or sue for damages. Why?

24) Debtor has further claimed that *"he was no longer involved with **any** Florida sales after*

*week 9 of 5/19/07, thus he owes Creditor nothing after that date".*

25) Why would Debtor just "*walk away*" from his Florida market after just 9 weeks, after

spending thousands to set up this business, with $210,000 in sales and over $26,000 in

profits *per Debtor himself* in 9 weeks, after obtaining 100% rights to the entire Florida

market, with Creditor now bringing in over $70,000 week in sales and doing "*too much*

*business*" that the credit card processor had to put a '*hold*' on the account?

26) Debtor did not "*walk away*" but instead opened a *second* Florida sales crew with FLP to

capitalize on this profitable Florida market, *further defrauding* Creditor of his $300,000

in profit sharing from this *second* Florida sales crew's net sales over $3,000,000 over the

four (4) years of 2007, 2008, 2009 and 2010, up to Debtor's filing this bankruptcy.

27) Creditor was very skeptical in 2007 that "*Debtor had no knowledge or involvement*

*with FLP's second sales crew in Florida*", and after subpoenaing Debtor's bank

statements in 2014 after filing the $287,100 lawsuit, Creditor has uncovered the evidence

to prove his skepticism was justified. Please see Debtor's 'Zman Enterprises' bank

account which clearly shows numerous charges in Florida ***after*** 5/19/07, when Debtor

claimed "*he had no further Florida involvement*", with credit card charges on 6/5/07,

6/8/07, 6/15/07, 6/18/07, 9/26/07, 10/1/07 and 10/3/07 as examples. Note that Debtor

lives in Indiana.

28) These Florida charges supports Debtor was involved in the *second sales crew* in Florida and deprived Creditor of his 50% profit sharing of *$300,000* on these Florida net sales over $3,000,000, *in addition to $225,176.34 also deserving to Creditor.* Debtor conspired with FLP's Matt Williams and Rob Cohen to cut Creditor out of the picture after week 9 and is why Debtor chose ***not*** to have FLP remove the *second* sales crew from Debtor/Creditor's Florida territory or to sue FLP for selling in his territory.

29) Debtor's 'Zman Enterprises' bank account even shows deposits being made from "Fair Finance" of $6344.81 on 7/18/07 and continuing monthly thereafter, *which was the new FLP credit card processor brought in by Debtor after 5/19/07 for Creditor's future sales*. This supports Debtor could have used "Fair Finance" himself after 5/19/07, without the requirement to go thru FLP, and further supports Debtor was still operating in Florida after 5/19/07, depriving Creditor of his 50% profit sharing from his sales and also from the *second* sales crew's sales, simply sharing these profits with Matt Williams and Rob Cohen instead. Why?

30) Because Debtor owed FLP, Matt Williams and Rob Cohen *"tens of thousands in service fees from Debtor's Toledo and South Bend franchises"* and also *"tens of thousands in service fees from FTG's first 9 weeks of sales",* (this is outlined in the prior filings of Creditor) with Debtor simply *defrauding* Creditor in order to pay back FLP, Matt Williams and Rob Cohen.

31) Additionally, with all of this debt owed to FLP, Matt Williams and Rob Cohen, Debtor did *not include FLP, Matt Williams or Rob Cohen as creditors in his bankruptcy*. Why? Because Debtor clearly worked out "some arrangement" to pay off those debts

8

prior to 2010, simply by *defrauding* Creditor and allowing FLP to keep Creditor's 50% profit sharing on *__all Florida sales__*, with Creditor now deserving to his $525,176.34 in total economic losses, with this debt *not deserving to be discharged due to fraud, embezzlement or larceny of Debtor.*

32) Creditor prays this Court to now review Debtor's income, assets and debts...etc., as additional household income is being brought in by Debtor's wife to pay on their *__"shared"__* living expenses, with Debtor *now having additional disposable income,* and has already offered "$10,000" to Creditor on this debt, with that $10,000 clearly a *__disposable asset__* and now deserving to Creditor as a *down payment* on Debtor's $525,176.34 owed.

33) In further support of Debtor owing Creditor on *all Florida sales after 5/19/07,* Creditor recently tested Debtor and *agreed to accept Debtor's pathetic $10,000 settlement offer,* but only if Debtor supplied an affidavit stating that *"Debtor obtained no benefit from Florida sales after 5/19/07, with Creditor deserving to his 50% profit sharing after that date from FLP, Matt Williams and Rob Cohen",* thereby allowing Creditor to file a lawsuit against FLP, Matt Williams and Rob Cohen for Florida sales made after 5/19/07, but *__Debtor did not accept this settlement offer__*, which is now off the table, and confirms *Debtor did obtain benefit from Florida sales after 5/19/07* and supports Debtor *conspired* with FLP, Matt Williams and Rob Cohen to *defraud* Creditor.

34) Debtor has also acknowledged to Creditor that he is deserving to a "*huge inheritance*", with Creditor praying to a *__lien__* on any inheritance or other future assets of Debtor, including the current/future equity in Debtor's residence, vehicles...etc.

9

# CONCLUSION

Creditor Baldwin is acting *pro se* in this matter, with no formal legal education, and prays this Court to grant Creditor some leniency as such, per: ***"Propria Persona or Non-Lawyer pro se litigant pleadings are not to be held to same standards of perfection as a practicing lawyer.*** See Haines v. Kerner 92 Sct 594, also see Powell v. Lennon 914 F2d 1459 (11th Cir 1990), also see Hulsey v. Ownes 63 F3d 354 (5th Cir 1995), also see Hall v. Bellmon 935 F.2d 1106 (10th Cir. 1991)." In Puckett v. Cox, it was held that ***"A pro-se pleading requires less stringent reading than one drafted by a lawyer",*** 456 F2d 233 (1972 Sixth Circuit USCA). Furthermore, Justice Black in Conley v. Gibson, 355 U.S. 41 at 48 (1957) ***"The Federal Rules rejects the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."*** Finally, according to Rule 8(f) FRCP and the State Court rule which holds that ***"All pleadings shall be construed to do substantial justice."***

**WHEREFORE**, with Debtor acting in "bad faith" by repeatedly *defrauding* Creditor since 2007 of his week 9 commissions, his 50% profit sharing and his business reimbursements owed, ***totaling $225,176.34 in economic losses*** per case no. 2014-CA-4365 and using Debtor's own figures, with Debtor simply *embezzling* company funds and wrongfully claiming *the money was seized by his credit card processor, when it was not,* with Creditor acting in "good faith" since 2007 by supplying Debtor and his agents over $2 million in net sales through 2009 as contractually agreed, with Debtor further ***failing to properly respond*** to the U.S. Tax Court and the Florida Court, as was *repeatedly served upon Debtor by the Saint Joseph County, Indiana Sheriff since 2012,* Creditor now prays this Court to *sua sponte* grant Creditor his $225,176.34 in economic losses per case no. 2014-CA-4365 and economic losses of $300,000 in profit sharing

10

from the *second* Florida sales crew, ***totaling $525,176.34***, including any interest, attorney fees, court costs, or other damages found deserving by this Court, with Debtor's debt to Creditor *not* to be discharged in this bankruptcy under 11 U.S.C. s/s 523(a)(4) which states: ***"Exceptions to discharge" - (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt- (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."***

Respectfully submitted,

Chad R. Baldwin
P.O. Box 691813
Orlando, FL 32869-1813
Phone: (407) 758-9547

Creditor, acting *pro se*

## JURY DEMAND

Pursuant to Bankruptcy Court procedures, Creditor demands a trial by jury on all issues so triable.

Chad R. Baldwin

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the following by U.S. mail, postage prepaid, this _5th_ day of _February_ 2015.

Clerk of the U.S. Bankruptcy Court
401 South Michigan Street
South Bend, IN 46601-2304

Todd D. Zimmerman
51900 Lake Knoll Court
Granger, IN 46530
(Debtor)

Debra Voltz-Miller
1951 E. Fox St.
South Bend, IN 46613
(Counsel for Debtor)

_____
Chad R. Baldwin

12

"Exhibit A"

IN THE _Circuit_ COURT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION

| | | |
|---|---|---|
| **CHAD R. BALDWIN** | ) | CASE NO: _2014-CA-4365_ |
| **P.O. BOX 691813** | ) | |
| **ORLANDO, FLORIDA 32869,** | ) | JUDGE: _Egan_ |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | **COMPLAINT** |
| **vs.** | ) | **(Jury Demand Endorsed Hereon)** |
| | ) | |
| **TODD DELRAE ZIMMERMAN, and** | ) | |
| **FLORIDA TRAVEL GROUP, LLC.,** | ) | |
| **51900 LAKE KNOLL COURT** | ) | |
| **GRANGER, INDIANA 46530,** | ) | RECEIVED |
| | ) | APR 2 8 2014 |
| **DEFENDANTS.** | ) | |

BY: .................

Now comes Plaintiff, CHAD R. BALDWIN, acting _pro se_, and for his claims against

Defendants, Todd D. Zimmerman and Florida Travel Group, would show this Court as follows:

## I.    PARTIES

1. Plaintiff is an individual currently residing in the Orange County, Florida area.  At all

   times relevant hereto, Plaintiff and Defendant operated a "travel/shopping service"

   known as _Florida Travel Group, LLC._ (hereinafter referred to as FTG), using the

   Plaintiff's mailing address of "7611 South Orange Blossom Trail, Suite #142,

   Orlando, Florida 32809", located in Orange County, Florida.

2. Defendant Zimmerman is an individual currently residing in Granger, Indiana who

   incorporated FTG in the State of Florida on 10/16/06, with an LLC # - L06000100389,

   using Plaintiff's mailing address of "7611 S. Orange Blossom Trail, #142, Orlando,

   Florida 32809" for FTG with the State of Florida, located in Orange County, Florida.

1

## II.    JURISDICTION AND VENUE

3. Jurisdiction and Venue of this matter is properly before this court pursuant to the events that give rise to Plaintiff's claims occurred in Orange County, Florida.

## III.    BACKGROUND FACTS

4. Plaintiff initially met Defendant around year 1994 while working in a "shopping service".

5. Plaintiff and Defendant quickly became friends, with Defendant then becoming Plaintiff's General Manager, hiring Plaintiff as his Sales Manager.

6. Defendant then became an *owner*, again hiring Plaintiff as his Sales Manager.

7. On 10/13/06, Plaintiff and Defendant agreed to become *"50/50 business partners"* in a new franchise "travel/shopping service" located out of Orange County, Florida, known as FTG.  (See attached EXHIBIT's "A-1 business contract", "A-2,3, State of Florida LLC registration", "A-4 Seller of Travel Surety Bond," "A-5 Florida Seller of Travel License # ST36753", and "A-6,7, Plaintiff's year 2005 Drivers License and W-2" confirming the address of FTG belonged to Plaintiff)

8. The "A-1 business contract" between the parties clearly states Plaintiff and Defendant will split all FTG start-up expenses 50/50.  This was done, with receipts available.

9. This contract also states Plaintiff will handle all the "sales", and other services, being paid a 10% commission on sales, and then splitting the profits 50/50 with Defendant.

10. This contract further states that Defendant was in charge of setting up the business and credit card machines, with Defendant verbally promising to add Plaintiff as an authorized user on all FTG "cc/bank accounts", now that both parties are 50/50 business partners.

11. Plaintiff processed two hundred and ten thousand two hundred and twenty one dollars ($210,221.00) in sales during the initial few months of operation of FTG in Florida.

2

12. Plaintiff then received the first bank statement of FTG from KEY BANK, which was mailed to Plaintiff's "7611 S.O.B.T #142, Orlando, FL 32809" mailing address, where Plaintiff immediately questioned Defendant about *non-business withdrawals* made from the FTG bank account by Defendant.

13. Defendant told Plaintiff *"Not to worry about his personal charges"* from the FTG bank account and then changed the FTG bank statement mailing address to ***his address***, never adding Plaintiff to the account as promised.

14. Shortly thereafter, Defendant informed Plaintiff that: *"FTG had processed too much money through its credit card terminal, that the credit card processor had placed a "HOLD" on the remaining one hundred thousand ($100,000.00) of funds in the FTG account, that the credit card processor needed to investigate for any possible misconduct due to FTG processing **more** money than Defendant was approved for on the account, and further that the FTG credit card account was now temporarily closed pending this investigation."* ***FTG was bringing in more sales than expected and greed took over.***

15. Defendant then informed Plaintiff that this "$100,000 HOLD" was only going to be for approximately *"60-90 days"* and that *"the FTG business was no longer going to be able to operate without the "held" funds or credit card processing privileges."*

16. Defendant then brought in the franchisor to FTG to help him out, being Robert Cohen and his associates at Florida Leisure Products (aka/ FLP), with FLP agreeing to let Defendant *temporarily* use their credit card terminals until Defendant could resolve his credit card processing issues. Again, Defendant was to provide the credit card machines and Plaintiff was to provide sales per their signed contract and *"All was still good."*

3

17. FLP, as the franchisor to franchisee FTG, demanded service fees from all of their franchises.

18. Defendant owned 50% of the FTG franchise in Orange County, Florida with Plaintiff owning the remaining 50%, and Defendant *also owned two (2) other franchises* located in Toledo, Ohio and South Bend, Indiana, (aka/ "GSN – ZMAN Enterprises").

19. Plaintiff had no ownership in Defendant's other two (2) franchises and was not liable for any debts of those franchises.

20. Plaintiff continued to perform his agreed to sales duties per his contract with Defendant, providing "SALES" to the new FLP credit card machines, with over two million dollars ($2,000,000.00) in sales processed into FLP credit card terminals over the next two (2) years by Plaintiff.

21. When FLP came in to assist Defendant, Plaintiff spoke with Mr. Cohen and his FLP associates based in Houston, Texas to confirm the Plaintiff's pay contract signed with Defendant.  FLP confirmed they were just ***temporarily*** assisting Defendant and everything would remain the ***same,*** except that FLP would now be paying the bills and payroll instead of Defendant, since the sales were now being deposited into FLP's bank account instead of Defendants.  FLP further stated they would ***not*** be paying any of the business expenses incurred by Plaintiff associated with his sales, as previously agreed to with Defendant, but, in the alternative, FLP did agree to raise Plaintiff's commissions from 10% to 12% to offset his business expenses.  <u>Note:</u> Plaintiff had rented a house to lodge his sales crew, holding sales meetings/storing seminar supplies there, and used this house as his office space.  Plaintiff and his sales crew would give sales seminars in hotels throughout Florida and it now seems obvious, in hindsight, Defendant realized his initial

4

contract with Plaintiff to pay *all* his business expenses was too high, thus Defendant had FLP renegotiate that aspect, to which Plaintiff agreed. Plaintiff was *still* to receive his profit sharing on his sales processed to FLP, as contractually agreed to with Defendant.

22. Plaintiff *never* received any of his profit sharing from the sales Plaintiff processed to the *FTG or FLP* credit card terminals as contractually agreed to.

23. After the initial 90 days of the FTG credit card terminal being *allegedly* closed, Plaintiff contacted Defendant about the $100,000 being held and Defendant informed Plaintiff *"The "HOLD" was going to continue for another 90 days"*. This was repeatedly stated by Defendant to Plaintiff *every 90 days over the next two (2) years,* only getting Plaintiff to provide over $2 million in "sales" to FLP credit card terminals with the promise to Plaintiff of a *"Big pay day soon!"*

24. Plaintiff eventually became skeptical and called the FTG credit card processor to inquire on the *"$100,000.00 being HELD"* and Plaintiff was informed of several *"release of funds"* made to Defendant. Plaintiff's cell phone number and "7611 S.O.B.T #142, Orlando, FL" address were listed in the contact information on this account and this information was *freely* provided to Plaintiff by the FTG credit card processor.

25. Plaintiff then *emailed* Defendant about this *release of funds* and Defendant got defensive, claiming Plaintiff had *"No authority to get this information from the credit card processor,"* informing Plaintiff *"Only a small amount of the $100,000 had been released and that Plaintiff would get his last paycheck of $2,100, his FTG business expenses, and 50% profit sharing when everything was finally resolved."* (E-mails between Plaintiff and Defendant confirm this and are available at this Court's request for *sua sponte* summary judgment in Plaintiff's favor.) See examples of "EXHIBIT's B-1,2,3,4,5".

26. Plaintiff was claiming to Defendant in these *available emails* that Plaintiff was owed:

    1) His last FTG paycheck of twenty one hundred dollars ($2,100.00) for the last week's $21,000 in sales Plaintiff provided to FTG, (*prior to FLP stepping in*),

    2) His FTG business expenses, ($10,000.00), and

    3) His twenty five thousand dollars ($25,000.00) of the 50% FTG profit sharing owed on the $210,000.00+ in sales provided to FTG by Plaintiff during the initial few months, and *prior to FLP stepping in.*

    NOTE: This is the alleged debt owed to Plaintiff *prior* to FLP stepping in with their credit card terminals, to which another two hundred and fifty thousand dollars ($250,000.00) is deserving to Plaintiff by Defendant for the profit sharing owed on this additional two million ($2,000,000.00.) in sales made by Plaintiff and processed into FLP credit card terminals over the next two (2) years. (Records are available).

27. Defendant advised Plaintiff by phone, and *email*, that *"Plaintiff's estimate of $25,000 in profit sharing was "a bit high" from his $210,000+ in FTG sales, and Plaintiff was deserving of only about ten thousand dollars ($10,000.00) in FTG profit sharing, with a final number to be determined after all monies were released from the credit card processor, and after all the FTG debts were paid off."*

28. This fiasco went on for *several years,* with Defendant always coming up with a new excuse, *time after time,* as to why he could not pay Plaintiff and why the "held" monies may *never* be released. Plaintiff even sent *emails* to Defendant about federal laws that forbid credit card processors from "holding" client's money for extended periods of time.

29. Plaintiff confronted FLP, asking where Plaintiff's profit sharing was from Plaintiff's Florida sales made into FLP credit card machines, and Plaintiff was informed by FLP that

6

*"Todd (Defendant) still owes FLP **tens of thousands of dollars** in back service fees from the FTG franchise's sales, and **also tens of thousands of dollars** in back service fees from Todd's **other two (2) franchises**. You need to speak to Todd about any profit sharing and money that he owes you, because he's not paying us (FLP) either."*

30. Plaintiff then confronted Defendant by phone, and also by ***email,*** stating *"FLP says you owe them money too, and it appears you're not paying anybody but **yourself**."*

31. Defendant replied by stating that *"I should have never bought the Toledo franchise and those debts are "killing me"."*

32. Plaintiff then informed Defendant by *email* that their FTG franchise was *independent* of Defendant's *other two (2) franchises* and that Defendant should not commingle FTG funds, paying Defendant's other franchise debts with Plaintiff's 50% profit sharing.

33. Defendant then became very *agitated,* stating *"He had mortgage payments and a family to support, was in debt, barely paying his bills, and promised Plaintiff he would get his money when everything was resolved."* Plaintiff felt sorry for Defendant and stopped bugging him, ***trusting*** Defendant would pay him when the $100,000 was completely released, as promised by Defendant.

34. FLP even informed Plaintiff that: *"The credit card processors were ruthless, holding monies for years",* and that Plaintiff *"Should just write off FTG's $100,000 being 'held' as a business loss, as they previously had $50,000 held, which was never released after numerous years and it was never expected to be released."* This may make FLP guilty of *"conspiracy"* for furthering the "fraud" of Defendant, if they did not in fact have $50,000 held and never released by the credit card processors as claimed.

35. Plaintiff became skeptical at this point, as it sounded very *illegal* for credit card

7

processors to seize money without ***ever*** returning it, with Plaintiff being *"naive and new"* to the ownership problems in this industry, trusting Defendant and FLP at their "word".

36. <u>NOTE:</u> Plaintiff had previously been robbed of over $20,000 in back wages from his prior employer, MDI, where Defendant was the General Manager of MDI and Plaintiff was his Sales Manager. Defendant claimed the MDI owners were responsible for Plaintiff's back wages owed, ***not him,*** giving cause for Plaintiff to go into business with *Defendant* at FTG, as Defendant was a *"Loyal friend and **not** like the owners at MDI."*

37. Plaintiff was trusting Defendant to pay him for his sales, *patiently waiting as was asked by his loyal friend, the Defendant,* but Defendant was repeatedly delaying the issue, claiming *"The money was probably **never going to be released",*** and kept giving Plaintiff excuse after excuse for ***years.***

38. Plaintiff even did research to help Defendant, sending Defendant ***emails*** about how it is *"illegal"* for credit card processors to "hold" their client's money indefinitely, with Plaintiff acting in *"good faith"* and trying to help Defendant recover these "held" monies, as Defendant was claiming severe financial hardship due to the FTG funds being held.

39. Plaintiff was then audited by the IRS for tax year 2007, when FTG began its sales, with Plaintiff asking Defendant around January 2012 to provide him the FTG bank records to show the IRS what FTG business expenses had incurred, and also of the $100,000 in "THEFT" by the credit card processor.

40. Defendant refused to comply and informed Plaintiff that *"I filed bankruptcy, you're not owed anything, and I'm not sending you anything!"* Defendant was becoming very threatening and intimidating at this point, hanging up on Plaintiff, living out of state.

41. Plaintiff was confused, *as this was all NEW,* never receiving any letter about Defendant's

8

bankruptcy or "creditor's meeting". Plaintiff then researched the Bankruptcy Court's records in Indiana, finding the Defendant's bankruptcy attorney, Debra Voltz-Miller.

42. Plaintiff called and learned from Ms. Voltz-Miller that Defendant *never* included Plaintiff as a "debtor" in his bankruptcy filing, nor did Defendant list FTG as a business owned by Defendant, thus never legally discharging any debts owed by Defendant/FTG to Plaintiff.

43. Ms. Voltz-Miller *emailed* Plaintiff the Defendant's bankruptcy filing on 5/2/12 and informed Plaintiff that the Defendant/FTG debts could be included by an *amended bankruptcy filing* by Defendant. The Defendant never amended his bankruptcy to include FTG or Plaintiff, and the Defendant's bankruptcy is now over. See "EXHIBIT C-1,2".

44. Plaintiff learned from reviewing Defendant's bankruptcy that Defendant had *also* been audited by the IRS and owed the IRS approximately $25,000 in back taxes for the years Plaintiff had been selling for Defendant and his associates at FLP.

45. Clearly, Defendant had income for those years, as he owed the IRS approximately $25,000 in income taxes, and this income is believed to be monies Defendant owes Plaintiff his 50% in profit sharing, per their signed contract.

46. It is only after this recent discovery, that it is *now* believed that Defendant may have *conspired* with FLP to avoid paying Plaintiff any of his profit sharing. Defendant appears to have wrongfully assigned Plaintiff's ownership interests in FTG to FLP to pay off Defendant's debts to FLP, with Defendant and FLP then splitting the remaining profits, thus cutting Plaintiff completely out of the picture.

47. This scenario has recently been raised to Defendant who is now claiming that Plaintiff and Defendant were *"never partners"* with Plaintiff *"never"* being promised 50% profit sharing from his Florida sales. It appears clear Defendant is now hiding something.

9

48. Plaintiff even borrowed $7,000 from his *father* on this FTG business, *with this debt and interest still being owed*. *E-mails* to Defendant confirm this and are available.

49. This matter only finally came to a head during Plaintiff's recent 2007 tax audit, when Defendant first raised his bankruptcy and refused to supply Plaintiff the FTG expenses/receipts for Plaintiff's IRS audit. This forced Plaintiff to issue a *subpoena* to Defendant from the U.S. Tax Court. (See "EXHIBIT D-1,2,3") Defendant then failed to comply with this subpoena, instead filing a "Motion to Quash" on May 2, 2012. (See "EXHIBIT E") Plaintiff again found the Defendant's bankruptcy attorney who emailed Plaintiff the Defendant's bankruptcy filing that same day of May 2, 2012. (See "EXHIBIT C-1,2") This date of *May 2, 2012* is Plaintiff's date of *Discovery*, only now realizing that Defendant had *really* filed bankruptcy, that Defendant was not lying, with Defendant now changing his previous agreement to pay Plaintiff, and now claiming bankruptcy protection instead. Further, it is this same day of *May 2, 2012* that Plaintiff realized Defendant was *hiding something* by not supplying the FTG expenses and receipts per Plaintiff's IRS subpoena.

50. Plaintiff's 2007 tax audit was just found *in favor* of Plaintiff on *March 6, 2014*, U.S. Tax Court docket #16781-10, without even needing these FTG deductions from Defendant, as the IRS refused to *agree and stipulate* to these deductions due to Defendant's refusal to supply any supporting documentation. (See attached "EXHIBIT F-1,2")

51. Plaintiff's IRS attorney has now informed Plaintiff to *sue* Defendant for these debts, as they were never included in Defendant's bankruptcy, nor approved by the IRS as a tax deduction for Plaintiff, and that Defendant cannot just *steal* money from Plaintiff, then lie for years, only now trying to claim bankruptcy protection to avoid his *theft*. Criminal

charges are also deserving against Defendant.

<u>Total damages deserving to Plaintiff include, but are not limited to:</u>

52. Plaintiff seeks to recover economic losses of Plaintiff's: 1) Last FTG paycheck of ***$2,100***,
    2) FTG business expenses incurred and never reimbursed of ***$10,000***, 3) 50% profit
    sharing on the initial $210,000+ in sales to FTG of ***$25,000***, and 4) 50% profit sharing
    on the $2,000,000+ in sales to FLP of ***$250,000***.  Total of *two hundred eighty seven*
    *thousand one hundred dollars*, ($287,100.00).

53. Plaintiff is also entitled to recover his necessary and reasonable attorney fees and the
    costs of this action.

54. Defendant's conduct as set forth above may also have been *'willful'* and further that
    Defendant may have possibly *'conspired'* with others to damage Plaintiff.  As such,
    Plaintiff requests to recover liquidated damages in an amount equal to his economic loss.

55. Plaintiff is entitled to recover non-economic damages for his pain, suffering and mental
    anguish in an amount to be determined by this Court or at jury trial.

56. Plaintiff requests punitive damages in the amount of one million dollars, ($1,000,000.00),
    or an appropriate amount to be determined by this Court or at jury trial, to teach
    Defendant how serious *'written contracts'* are, that he cannot just *"steal"* money from a
    friend/business partner, then ***lie*** to that friend/partner for *years* promising the money, only
    using the money for other purposes, then wrongfully transferring Plaintiff's 50% business
    interests to FLP to pay off Defendant's *other debts*, then to wrongfully try and claim
    *bankruptcy protection* at the end, and ***now*** trying to deny a business contract ever existed
    with Plaintiff.  Punitive damages are deserving to Plaintiff for Defendant's alleged
    misconduct, misrepresentations, and theft.

11

57. Plaintiff further seeks any other damages deemed owed and deserving by this Court and jury.

## IV.    BREACH OF CONTRACT AND FIDUCIARY DUTY

58. Plaintiff incorporates the allegations contained herein as if fully rewritten here.

59. Defendant clearly is in "breach of written contract and fiduciary duty" by using FTG funds for other purposes, and Plaintiff is deserving of the damages described herein.

## V.    FRAUD, BAD FAITH

60. Plaintiff incorporates the allegations contained herein as if fully rewritten here.

61. Defendant clearly has committed "fraud and acted in bad faith" by informing Plaintiff $100,000 of FTG funds were being "held" by the credit card processor, when the funds were not "held", already being released and spent by Defendant on non FTG expenses.

62. Further, Defendant is alleged to have fraudulently transferred Plaintiff's 50% of FTG to FLP without Plaintiff's knowledge or consent in order to pay off Defendant's outstanding debts with FLP, with FLP possibly conspiring with Defendant.

63. Plaintiff is deserving of the damages described herein.

## VI.    THEFT BY DECEPTION

64. Plaintiff incorporates the allegations contained herein as if fully rewritten here.

65. Defendant clearly has committed "theft by deception" by informing Plaintiff $100,000 of FTG funds were being "held" by the credit card processor, when the funds were not "held", already being released to Defendant.

66. Further, Defendant is alleged to have *deceived* Plaintiff by unknowingly transferring Plaintiff's 50% ownership to FLP without Plaintiff's knowledge or consent in order to

12

pay off Defendant's outstanding debts with FLP, with FLP possibly conspiring with Defendant.

67. Plaintiff is deserving of the damages described herein.

## CONCLUSION

Plaintiff has acted in *"good faith"* with Defendant over the last *nine years*, trusting Defendant as a loyal friend, only to *first* learn on May 2, 2012 that Defendant has lied and is now refusing to honor his *written and verbal contractual obligations* to Plaintiff. Since that date, Plaintiff has tried to resolve this amicably with Defendant, but Defendant refuses to comply. This complaint is now deserving upon Defendant.

**WHEREFORE**, for the foregoing reasons, Plaintiff requests judgment against Defendant as follows:

A) That this Court award Plaintiff his economic losses of $287,000.00, or an amount to be determined at trial:

B) That this Court award Plaintiff his reasonable attorney fees and the costs of this action:

C) That this Court award Plaintiff liquidated damages in an amount equal to his economic loss:

D) That this Court award Plaintiff his non-economic losses in the form of pain, suffering and mental anguish in an amount to be determined at trial:

E) That this Court award Plaintiff punitive damages in the amount of $1,000,000.00, or an appropriate amount to be determined at trial:

F) That this Court award Plaintiff such other and further relief as may be deemed just and proper.

13

Respectfully submitted,

Chad R. Baldwin
P.O. Box 691813
Orlando, FL 32869
(407) 758-9547

Plaintiff, acting *pro se*

## JURY DEMAND

Pursuant to civil procedures, Plaintiff demands a trial by jury on all issues so triable.

Chad R. Baldwin

14

October 13, 2006

To Whom It May Concern:

Chad R. Baldwin & Todd D. Zimmerman agree to open a business together, ie) Travel Club, in Florida. Location to be determined – possibly Tampa/Clearwater. Both parties agree to equal ownership of said business – 50% to each party. Both parties agree to pay all start up fee's on an equal basis, ie) Corporate start up fees, state license fees, business rent…etc. As such, both parties agree to a 50/50 split of all business profits.

Chad Baldwin will act as General Manager of said location, providing day-to-day on site operations- ie)sales, hiring, training, setting up local services, customer service..etc- at a pay rate of 10% commissions of weekly net sales.

Todd Zimmerman will provide credit card terminals for said business & will be President of said corporation. Chad Baldwin will have ownership of 50% of stock in said corporation with all voting rights to such stock for all business decisions.

Telemarketing & the Travel / Shopping service to be provided by a third party at a rate of 20% of contract sale, (interest not included). Any changes to service provider or fee's for said service shall be agreed upon by both parties in writing

Any conflict's arising in said business operations shall be handled in arbitration.

THIS AGREEMENT IS MADE THIS 13TH DAY OF OCTOBER, 2006

X _____  DATE __10/13/06__
CHAD R BALDWIN

X _____  DATE __10/13/06__
TODD D ZIMMERMAN

X _____  DATE __10/13/6__
WITNESS
MATT ENGEL

This Contract can be amended as we go

# Certified Copy

I certify the attached is a true and correct copy of the Articles of Organization of FLORIDA TRAVEL GROUP, LLC, a limited liability company organized under the laws of the state of Florida, filed electronically on October 16, 2006, as shown by the records of this office

I further certify that this is an electronically transmitted certificate authorized by section 15.16, Florida Statutes, and authenticated by the code noted below.

The document number of this limited liability company is L06000100389.

Authentication Code: 061016092410-200080840462#1

Given under my hand and the
Great Seal of the State of Florida
at Tallahassee, the Capital, this the
Sixteenth day of October, 2006



Sue M. Cobb
**Sue M. Cobb**
**Secretary of State**

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L06000100389
FILED 8:00 AM
October 16, 2006
Sec. Of State
gmcleod

## Article I

The name of the Limited Liability Company is:

FLORIDA TRAVEL GROUP, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

7611 S. ORANGE BLOSSOM TRAIL
STE 142
ORLANDO, FL. US 32809

The mailing address of the Limited Liability Company is:

7611 S. ORANGE BLOSSOM TRAIL
STE 142
ORLANDO, FL. US 32809

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

TODD ZIMMERMAN
7611 S. ORANGE BLOSSOM TRAIL
STE 142
ORLANDO, FL. 32809

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity. I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature: TODD ZIMMERMAN

# SELLER OF TRAVEL

Bond #: <u>964009622</u>

## SURETY BOND

KNOW ALL MEN BY THESE PRESENT that we, <u>Florida Travel Group, L.L.C.</u>, as Principal (hereinafter referred to as Principal), and <u>Liberty Mutual Insurance Company</u>, whose address is <u>175 Berkeley Street, Boston, MA  02117</u> and telephone # <u>617-357-9500</u>, as Surety (hereinafter referred to as Surety), are held firmly bound unto the State of Florida, Department of Agriculture and Consumer Services, (hereinafter referred to as Obligee) in the sum of $10,000.00, for the use and benefit of any consumer who is injured by the fraud, misrepresentation, breach of contract, financial failure, or by violation of any provision of Sections 559.926-559.939, Florida Statutes, the Florida Sellers of Travel Act.  This bond shall be amenable to and enforceable only by and through administrative proceedings before the Department and shall be applicable and liable <u>only</u> for the payment of claims duly adjudicated by order of the Department.  NOW, THEREFORE, the condition of this obligation is such that if the Principal shall perform or cause to be performed the contracted services for which the Principal may be held liable by reason of the Principal's failure to perform, fulfill, or carryout any contract, agreement, or arrangement governed by Sections 559.926-559.939, Florida Statutes., then this obligation shall be void.  Otherwise this obligation shall remain in force and effect in law subject, however, to the following limitations:

1. That the Obligee (State of Florida) shall notify the Surety of any default of the Principal hereunder, at the earliest possible time following the discovery of such default.
2. That the Surety shall promptly notify the Obligee in writing of any changes in either the Principal or amount of bond set forth above.  However, failure of the Surety to provide such notice shall not affect the validity of this bond.
3. That if the Surety shall so elect, this bond may be canceled by giving 30 days written notice to the Obligee.  Said notice shall contain full name, city, and state where the Principal is located, and the agency code number assigned to the Principal by the Obligee.  The Surety, however, will remain liable for any default occurring during the period up to the expiration of said 30 days notice and such 30 day period shall begin only upon receipt of said notice by the Obligee.
4. That in no event shall the Surety be liable for a greater amount than that shown above.

This bond is effective <u>November 2, 2006</u>, 12:01 A.M. standard time and shall continue in force until canceled.

In witness hereof, the Principal and Surety have executed this instrument on <u>November 2, 2006</u>.

PRINCIPAL:

Witness

Witness

SURETY:

Witness

Witness

LOCAL AGENT:

Laura D. Mosholder
Name of Local Agent & Contact Person

Florida Travel Group, L.L.C.

By: _____
Signature                              (SEAL)
Title: _____

Liberty Mutual Insurance Company
By: _____
Laura D. Mosholder, Attorney-In-Fact &        (SEAL)
Florida Resident Agent

2500 W. Lake Mary Blvd., Ste. 112, Lake Mary, Fl 32746
(407) 688-9385

DACS – 10200E (REVISED 11/20/2002)



*( EXHIBIT A )*

Florida Department of Agriculture and Consumer Services
Division of Consumer Services
2005 Apalachee Pkwy
Tallahassee, Florida  32399-6500

November 28, 2006

FLORIDA TRAVEL GROUP LLC
3454 OAK ALLEY CT STE 505
TOLEDO, OH 43606-1356

SUBJECT: Seller of Travel Registration License
Registration #:  ST36753

    Your application and fee for a license as a seller of travel as required by Chapter 559, Florida Statutes, have been received and processed.

    Your registration certificate appears below.  This certificate should be detached along the dotted line and prominently displayed at your primary place of business.  Each contract of a seller of travel must include the phrase "FLORIDA TRAVEL GROUP LLC  is registered with the State of Florida as a Seller of Travel. Registration No. ST36753."  Each advertisement of a seller of travel must include the phrase "Fla. Seller of Travel Ref. No. ST36753."

    Proof of a current license must also be presented before the local occupational license(s) may be issued or renewed.  This license will expire on November 28, 2007.

    If you have any questions, please do not hesitate to call the Division of Consumer Services at 800-435-7352 or 1-800-HELP-FLA.

— — — — — — — — — — — — — — — Cut Here — — — — — — — — — — — — — — —



**State of Florida**
**Department of Agriculture and Consumer Services**
Division of Consumer Services
**2005 Apalachee Pkwy**
**Tallahassee, Florida  32399-6500**

Registration No.:  **ST36753**
Issue Date:  November 28, 2006
Expiration Date:  November 28, 2007

## Florida Seller of Travel License

Chapter 559, Florida Statutes

**POST CERTIFICATE**
**CONSPICUOUSLY**

**FLORIDA TRAVEL GROUP LLC**
**7611 S ORANGE BLOSSOM TRL #142**
**ORLANDO, FL 32809-8521**

*Charles H. Bronson*

CHARLES H. BRONSON
COMMISSIONER OF AGRICULTURE



"TRPRT PRINT DO NOT PROCESS."

7022135019306

| b Control number | 22222 | Void ☐ | For Official Use Only ▶ OMB No. 1545-0008 | | |
|---|---|---|---|---|---|

| b Employer identification number (EIN) | | 1 Wages, tips, other compensation 50,035.00 | 2 Federal income tax withheld 6,678.00 |
|---|---|---|---|
| c Employer's name, address, and ZIP code  FLOR FLORIDA LEISURE PRODUCTS INC  GLOBAL SAVINGS NETWORK 7009 OLD TROY PIK E  DAYTON OH 454240000 | | 3 Social security wages 50,035.00 | 4 Social security tax withheld 3,102.00 |
| | | 5 Medicare wages and tips 50,035.00 | 6 Medicare tax withheld 726.00 |
| | | 7 Social security tips | 8 Allocated tips |
| d Employee's social security number | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial    Last name  CHAD R BALDWIN | | 11 Nonqualified plans | 12a See instructions for box 12 |
| | | 13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | 12b |
| | | 14 Other | 12c |
| 7611 S ORANGE BLOSSOM TRL, APT 142  ORLANDO FL 328090000 | | | 12d |
| f Employee's address and ZIP code | | | |

| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|
| IN | 9,035 | 289 | | | |

Form **W-2** Wage and Tax Statement

**2005**

Department of the Treasury—Internal Revenue Service

For Privacy Act and Paperwork Reduction Act Notice, see back of Copy D.

Copy A For Social Security Administration — Send this entire page with Form W-3 to the Social Security Administration; photocopies are not acceptable.

Cat. No. 10134D

Do Not Cut, Fold, or Staple Forms on This Page — Do Not Cut, Fold, or Staple Forms on This Page

W2 Indicator S



**Subject:** Re: Pat Cleveland

**From:** tzman5041@aol.com (tzman5041@aol.com)

**To:** chadfsu1@yahoo.com;

**Date:** Friday, November 2, 2007 7:01 PM

Dont worry about me spending a couple hundred dollars out of the FTG acct, this is my acct and I will deal at tax time, yeah we agreed to split the profits 50/50 thats it! You can call yourself an owner of what?You had no recourse on the 55k in refunds, all you have done is set back and wait for your money, boy this is a real 50/50 ownership eh!I have been fighting for my life and you hae no clue!You have not addressed the VIP situation whats up?These people that are still complaining are people that were issued certs after the FTG regime was done!Dont try to bullshit me, I know whats going on!These people that are complaining dont want that piece of shit voucher you have they want the good cert, why we are still dealing with this I have no fucking clue.I am not going to fuck you , I just am a lttle leary about you fucking me? Zman

-----Original Message-----
From: chad baldwin <chadfsu1@yahoo.com>
To: tzman5041@aol.com
Sent: Fri, 2 Nov 2007 12:33 pm
Subject: Re: Pat Cleveland

I told you I was out of the "3-Day Hotel voucher's" you kept wanting me to send to YOUR customer's up NORTH ! AGAIN, WHY ARE WE MIXING FTG MONEY WITH YOUR OTHER BUSINESS EXPENSES??

I emailed you last week saying I still had "AIRLINE" voucher's !!! What am I supposed to do with them ? Wipe my ass or give them away!! We've already paid for them !!

I received a FTG bank statement in Orlando MONTHS ago before you changed the mailing address to you up north. I'm just curious why FTG money is being spent on other things than FTG !! ie) Your GSN South Bend store, your groceries etc. I still haven't received my last paycheck & FTG money is going other places !!

I have a contract signed by both of us agreeing to 50/50 control of FTG. I paid 50% of all corporate start up fee's etc.

I still have airline voucher's to give out & we ran out of FLP gift voucher's & I gave out a FTG gift voucher to calm down a customer. They get the same gift & if I get any gift fee's I'll deposit them as usual so there'll be a little extra $ for you to spend on "whatever" !! BIG DEAL !!

I spent THOUSANDS OF DOLLARS ON FTG EXPENSES from start up expenses, mail, hotel rooms, printing etc.. from Sarasota to Naples !! You weren't paying these expenses down here, I was !! I was supposed to be reimbursed & I still haven't. Or received my last paycheck !!

I haven't been bitching, I'm patiently waiting !! You called me & started bitching !! About a gift voucher !! GET REAL !!! WE'VE ALREADY PAID FOR THEM, LET'S GIVE THEM OUT & RE-COUP A LITTLE MONEY !!!

"EXHIBIT B2"

**Subject:** Re: Susan Scheetz

**From:** chad baldwin (chadfsu1@yahoo.com)

**To:** tzman5041@aol.com;

**Date:** Tuesday, February 12, 2008 12:42 PM

Just keep me informed on what's going, are you to receive the renewal fees ? Are you to keep paying the "air check" refunds forever, year after year ?? You might want to get Matt to sign off for any future "Refunds" for the future !!

*tzman5041@aol.com* wrote:

> I just figured out what I paid in travel rebates the last 3 months and brs that Matt did not pay almost 13000 there are numerous brs from ftg. you recd 4700 whuch would have covered your expenses...I am fighting for my life...I have right now 4 ftg members that are fighting me for their money back 2 ags and 2 amex disputes... this fucking bullshit will never end...these people are all saying that they were lied too...especially Wes s memberships. What money I do have is there to protect me from bankruptcy. you never had 20000 in profit sharing not even close. I do owe you some money..but I surely am not going to go bankrupt because of this fucking bullshit...when the smoke clears and all the brs have settled, they have a fricking year to dispute not 6 months, I have a bunch of brs from Toledo when you were there also, we then can figure out what if anything is owed we will look at it...I am still sending out air certs to members that never recd their shit ...can you bekieve 8 months later....I dont know what to think of this situation now with people calling me that toured in Aug that have FTG certs....its my ass on the line and if I get through it we will talk about this issue.My mother has not been paid back, you have no idea what Ive been going through
>
>
> -----Original Message-----
> From: chad baldwin <chadfsu1@yahoo.com>
> To: tzman5041@aol.com
> Sent: Fri, 8 Feb 2008 11:30 am
> Subject: Re: Susan Scheetz
>
> no 35 certs, am I ever gonna get my last check from you or these FTG expenses reimbursed ?? It's been almost 1 year todd ?? I was also looking to get $20,000 in profit sharing, you said I was to get $10,000. I'll take the $10,000 & we'll call it even.
>
> *tzman5041@aol.com* wrote:
>
> > do you have any 35.00 air certs
> >
> >
> > -----Original Message-----
> > From: chad baldwin <chadfsu1@yahoo.com>
> > To: tzman5041@aol.com
> > Sent: Fri, 8 Feb 2008 2:30 am

EXHIBIT B-3

Subject: [No Subject]

From: chad baldwin (chadfsu1@yahoo.com)

To: tzman5041@aol.com;

Date: Thursday, June 19, 2008 2:18 PM

Hey,

I just heard lawmakers stating that the credit card processors holding money is ILLEGAL & that they can be criminally charged.  Have you received all the $100,000 of held money ??

I still have unreimbursed expenses I paid on FTG & my last paycheck owed.

Chad

https://us-mg6.mail.yahoo.com/neo/launch?.rand=bugcfg3skliq3         4/28/2014

"Exhibit B-4"

Zman Enterprises
5776-51 Grape Rd #162
Mishawaka, In 46545

Chad Baldwin
252 S.E 46th Terrace
Cape Coral FL 33904

SOUTH BEND IN 466
18 JUL 2007 PM 2 T



Chad,

Fair deposited 63oo into My Act
So I will START disBursing As
it comes in.

Wes says that your telling
everyone that I owe you 25K
I think you may need to
re-calculate   I owe you

your expenses plus 1/2 of the
profit for the couple of months!
we worked!
I lied to the c/c companies?
Keep talking!!

"EXHIBIT C-1"

**Subject:** Bankruptcy of Zimmerman

**From:** Debra Voltz-Miller (dvoltz-miller@datacruz.com)

**To:** chadfsu1@yahoo.com;

**Cc:** kfox@datacruz.com;

**Date:** Wednesday, May 2, 2012 11:17 AM

Mr. Baldwin,

       Attached you will find a copy of Mr. Zimmerman's petition and schedules.

Debra Voltz-Miller, Attorney
Debra Voltz-Miller & Associates
1951 E. Fox Street
South Bend, IN  46613
Ph: 574-289-1709
Fx: 574-289-1909

Confidentiality Notice: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute or take action in reliance upon this e-mail.  If you have received this in error, please delete this message immediately.  We do not waive attorney-client or work product privilege by the transmission of this message.

B1 (Official Form 1)(4/10)

| **United States Bankruptcy Court**<br>**Northern District of Indiana** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Zimmerman, Todd Delrae** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**xxx-xx-5041** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**51900 Lake Knoll Ct.**<br>**Granger, IN**<br>ZIP Code **46530** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**St Joseph** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7     ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 9         of a Foreign Main Proceeding<br>☐ Chapter 11   ☐ Chapter 15 Petition for Recognition<br>☐ Chapter 12         of a Foreign Nonmain Proceeding<br>■ Chapter 13 |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code. | **Nature of Debts**<br>(Check one box)<br>■ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☐ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4-01-13 and every three years thereafter).*<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

Estimated Assets

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |



# Saint Joseph County Police

Civil Division
125 S. Lafayette Blvd, 3rd Flr, South Bend, In 46601
Telephone: (574) 235-9651 Fax: (574) 235-9744

**Michael D. Grzegorek**
Sheriff

**Timothy Decker**
Chief

**Robert R Boits**
Asst. Chief

---

## AFFIDAVIT OF SERVICE OF SUMMONS

STATE OF INDIANA    )
ST. JOSEPH COUNTY )    SS

I, Cpl. Vanschoiack, of the St. Joseph County Police Department being duly sworn do certify that on, Monday, the 23rd of April, at 10:15a.m., I served the attached process by delivering a copy thereof to: Todd Zimmerman, the party to be served therein named, together with a copy of: Subpoena.

Cpl. Vanschoiack
St. Joseph County Sheriff's Department

Subscribed and sworn to before me a Notary Public, this day of the 23rd of April, 2012.

Notary Public Marcia Fuller
My Commission Expires: 05-23-15

# United States Tax Court
## WASHINGTON, D.C. 20217

Chad R. Baldwin,
                              Petitioner,

                    V.                                    Docket No.    16781-10

COMMISSIONER OF INTERNAL REVENUE,
                              Respondent.

## SUBPOENA

For all financial records pertaining to Florida Travel Group LLC.,(FTG), EIN #20-5713465.

To Todd D. Zimmerman, 51900 Lake Knoll Court, Granger, Indiana 46530

YOU ARE HEREBY COMMANDED to appear before the United States Tax Court

n/a
(or the name and official title of a person authorized to take depositions)

at ___n/a___ on the ___n/a___ day of ___n/a___
     (Time)            (Date)                    (Month) (Year)

at _____n/a_____
                              (Place)

then and there to testify on behalf of _____n/a_____ in the above-entitled case,

and to bring with you ** Please mail copies of all FTG bank statements, credit card processor statements,

tax returns & a copy of the bankruptcy filing listing Chad Baldwin as an unsecured creditor of

approximately $25,000.          **Please MAIL "true & complete" copies by no later than

April 27, 2012 to:  Chad Baldwin,  P.O. Box 691813, Orlando, FL 32869-1813.          Thank you.
                                                        (Use reverse if necessary)

and not to depart without leave of the Court.

Date ___April 17, 2012___

Chad R. Baldwin/Pro Se
Counsel for Petitioner

Robert R. Di Trolio, Clerk

## RETURN ON SERVICE

The above-named witness was summoned on the _23_ day of _4_ 20_12_
at _____ by delivering a copy of this subpoena to h_____ and, if
a witness for the petitioner, by tendering fees and mileage to h_____ pursuant to Rule 148 of the Rules of Practice of
the Tax Court.

Dated _25/4/12_          Signed _____

Subscribed and sworn to before me this _____ day of _____, 20_____

                                                        [SEAL]
                    (Name and Title)

FORM 14 (Revised 5/11)

1  EXHIBIT D-3

| SHERIFF'S FEES DUE COUNTY | |
|---|---|
| Case/Fingerprint/Rec Chk | |
| Accident Reports | |
| Firearm Licenses | |
| Other Fees Due County | 60.00 |
| Order of Sale, Fees | |
| Bills and Executions | |
| Income Tax Warrants | |
| Sheriff Personal Fees | |
| Other Trust | |
| | |
| | |
| | |
| | |
| TOTAL $ | 60.00 |

## COUNTY SHERIFF'S OFFICIAL RECEIPT

Receipt Date: **4/24/2012**                    102471

Cause No  **Todd Zimmerman**          Tax Warrant No

Received of  **Chad Baldwin**                    the sum

of  **Sixty Dollars and 00 Cents**                    Dollars

**$60.00**

For  **Out of State Service/Tax Fees**

Payment Type:

Cash ☐   Check ☐   M.O. ☐   EFT ☐   Check No

Credit Card ☐   Bank Card ☐   Other ☑   By: susan

Michael D. Grzegorek

SHERIFF ST. JOSEPH COUNTY

---

ST BE PERSONAL SERVICE:

ME: Todd Zimmerman

DRESS: 51900 Lake Knoll Cut Granger

| TE: | DAY | TIME |
|---|---|---|
| 4/23 | Mon | 10:15 |

TES:  135   4/23/12

US TAX COURT
RECEIVED

MAY 02 2012

"EXHIBIT-E" CMS



US TAX COURT
FILED

MAY 02 2012

CHAD R. BALDWIN

    Petitioner(s)

    v.

    Docket No.  16781-10

COMMISSIONER OF INTERNAL REVENUE,

    Respondent


# Todd Zimmerman's Motion to Quash Subpoena

Tampa, FL

**ORIGINAL**



or/cms

"EXHIBIT F-1"

### UNITED STATES TAX COURT

CHAD R. BALDWIN,                    )
                                    )
                Petitioner,         )
                                    )
        v.                          )   Docket No.  16781-10
                                    )
COMMISSIONER OF INTERNAL REVENUE,   )
                                    )
                Respondent.         )

### DECISION

Pursuant to the agreement of the parties in this case, it is

ORDERED AND DECIDED: That there is no deficiency in income tax due from, nor overpayment due to, petitioner for the taxable year 2007.

**(Signed) Michael B. Thornton**
**Chief Judge**

Entered:  MAR - 6 2014

\*          \*          \*          \*          \*

SERVED MAR - 6 2014

Docket No. 16781-10          - 2 -

It is hereby stipulated that the Court may enter the foregoing decision in this case.

WILLIAM J. WILKINS
Chief Counsel
Internal Revenue Service

*Shellie H. Hart* (signature)

SHELLIE H. HART
Counsel for Petitioner
Tax Court Bar No. HS0436
37 N. Orange Avenue, Suite 500
Orlando, FL 32801
Telephone: (407) 926-4151

By: _____

PETER T. MCCARY
Attorney
(Small Business/Self-Employed)
Tax Court Bar No. MP0488
Stop C, Room 240
400 West Bay Street
Jacksonville, FL 32202
Telephone: (904) 665-1902

Date: 2/21/2014

Date: 2/25/14

"Exhibit B"

Search Menu New Civil Search Refine Search  Back

Location : Orange County

# REGISTER OF ACTIONS
### CASE No. 2014-CA-004365-O

BALDWIN, CHAD R vs. ZIMMERMAN, TODD DELRAEet al.

§
§
§
§
§
§
§

| | |
|---|---|
| Case Type: | **CA - Negligence Other** |
| Date Filed: | **04/28/2014** |
| Location: | **Div 33** |
| Judicial Officer: | **White, Keith F** |
| Uniform Case Number: | **482014CA004365A001OX** |

---

### PARTY INFORMATION

**Lead Attorneys**

**Defendant**     **FLORIDA TRAVEL GROUP LLC**

**Defendant**     **ZIMMERMAN, TODD DELRAE**

**Plaintiff**     **BALDWIN, CHAD R**

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 11/06/2014 | **Response in Opposition to** <br> *Bankruptcy Petition* |
| 10/30/2014 | **Notice** <br> *To Additional Creditors* |
| 10/28/2014 | **Correspondence** <br> *Us Bankruptcy Court- form North District of Indiana* |
| 09/29/2014 | **Motion** <br> *TO ADD SUMMONS TO THE DOCKET AND TO THE RECORD* |
| 06/17/2014 | **Affidavit of Service** |
| 04/29/2014 | **Notice to Produce** |
| 04/29/2014 | **Subpoena Issued** <br> *AS TO BANK RECORDS* |
| 04/28/2014 | **Case Initiated** |
| 04/28/2014 | **Complaint** |
| 04/28/2014 | **Civil Cover Sheet** |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Plaintiff BALDWIN, CHAD R** | | |
| | Total Financial Assessment | | 400.00 |
| | Total Payments and Credits | | 400.00 |
| | **Balance Due as of 02/04/2015** | | **0.00** |
| 04/28/2014 | Transaction Assessment | | 400.00 |
| 04/28/2014 | Counter Payment | Receipt # CV-2014-14954     BALDWIN, CHAD R | (400.00) |

2/4/2015

http://myclerk.myorangeclerk.com/CaseDetail.aspx?CaseID=8862245

"Exhibit C"

KeyBank
P.O. Box 22114
Albany, NY 12201-2114



2    T 0348 **00000** R EM T1
FLORIDA TRAVEL GROUP LLC
7611 S ORANGE BLOSSOM TRL
SUITE 142
ORLANDO FL 32809-8524

*Questions or comments?*
Call our Key Business Resource Center
1-888-KEY4BIZ (1-888-539-4249)

---

*Enroll in Online Banking today at Key.com.*
*Access your available accounts, transfer funds and view your transactions right from your PC.*

---

### KeyNotes

*Key Merchant Services*
*Your challenges. Our solutions. Your success.*

*Your business is unique and so are its challenges. Key Merchant Services and
the NOVA Network have the tools you need to answer the challenges your business
faces, regardless of your industry.*

*Key Merchant Services enables your business to accept credit card and debit card
payments for goods and services and may increase your revenue and efficiency.*

*\* Streamline Credit Card Processing*
*\* Internet processing and Internet-ready Gift Certificate Programs to enhance
your business and increase your revenue*
*\* A Wide Range of Retail-Oriented Services*
*\* Online reporting*
*\* Banking and Payment Processing Expertise*

*For more information about Key Merchant Services, please call 1-888-KEY4BIZ
(1-888-539-4249) or visit your local branch.*

*Subject to credit approval.*

4607 - 00101
9940

**Key Business Free Checking** ████████4607
FLORIDA TRAVEL GROUP LLC

| | |
|---|---:|
| Beginning balance 3-31-07 | $3,577.92 |
| 6 Additions | + 14,037.07 |
| 14 Subtractions | -14,267.71 |
| Net fees and charges | -30.00 |
| **Ending balance 4-30-07** | **$3,317.28** |

**Additions**

| Deposits | Date | Serial # | Source | |
|---|---|---|---|---:|
| | 4-4 | | Customer Deposit | $4,000.00 |
| | 4-16 | 11937 | Customer Deposit | 1,317.74 |
| | 4-18 | | Customer Deposit | 3,500.00 |
| | 4-23 | | Customer Deposit | 819.56 |
| | 4-24 | 9124 | Customer Deposit | 399.77 |
| | 4-25 | | Credit Memo | 4,000.00 |
| | | | **Total additions** | **$14,037.07** |

**Subtractions**

Paper Checks        * check missing from sequence

| 3002 | 4-3 | $415.76 | 3003 | 4-2 | 259.85 | **Paper checks paid** | **$675.61** |
|---|---|---|---|---|---|---|---|

| Withdrawals | Date | Serial # | Location | |
|---|---|---|---|---:|
| | 4-5 | 8728 | Fedwire Withdrawal | $1,860.00 |
| | 4-5 | | Paychex          Payroll | 2,868.01 |
| | 4-6 | | Paychex Tps      Taxes | 1,020.70 |
| | 4-11 | | Check/Supply Purchase | 123.57 |
| | 4-17 | | FL Corp File -Internet  8502456939     FL | 50.00 |
| | 4-19 | | Paychex          Payroll | 2,563.94 |
| | 4-20 | | Paychex Tps      Taxes | 858.24 |
| | 4-20 | | Wal-Mart #2678        Mishawaka     In | 36.00 |
| | 4-23 | 11937 | Chargeback, Store #      11937 | 399.00 |
| | 4-25 | | Martin'S #25          Granger        In | 110.68 |
| | 4-26 | | Paychex          Payroll | 2,747.37 |
| | 4-27 | | Paychex Tps      Taxes | 954.59 |
| | | | **Total subtractions** | **$14,267.71** |

**Fees and charges**

| Date | | Quantity | Unit charge | |
|---|---|---|---|---:|
| 4-5-07 | Fedwire Service Charge | 1 | 20.00 | -$20.00 |
| 4-30-07 | Chargeback Fee | 1 | 10.00 | -10.00 |
| | **Fees and charges assessed this period** | | | **-$30.00** |

████████4607 - 00101
9940





## CONSUMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-in-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed there, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

- Tell us your name and Account number ;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

| | |
|---|---|
| XFER TO SAV | - Transfer to Savings Account |
| XFER FROM SAV | - Transfer from Savings Account |
| XFER TO CKG | - Transfer to Checking Account |
| XFER FROM CKG | - Transfer from Checking Account |
| PMT TO CR CARD | - Payment to Credit Card |
| ADV CR CARD | - Advance from Credit Card |

**Preauthorized Credits:** If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

**IMPORTANT LINE OF CREDIT INFORMATION**

**Billing Rights Summary: In case of Error or Questions About Your Bill:** If you think your statement is wrong, or if you need more information about a transaction on this statement, write us on a separate sheet at the address shown on your statement as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number;
- The dollar amount of the suspected error;
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the items you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you delinquent or take any action to collect the amount you question.

**Explanation of Finance Charge:** Your Finance Charge is computed on all cash advances from the date each cash advance is made until we receive payment in full. We figure the Finance Charge on your line of credit by applying the daily periodic rate to the "Average Daily Balance" (Finance Charge Balance) of your line of credit including current transactions. To get the average daily balance we take the beginning balance of your line of credit each day, add any new cash advances or debits, and subtract any payments or credits, fees and unpaid Finance Charge. This gives us your daily balance. Then we add up all daily balances and divide this total by the number of days in the billing cycle to get the average daily balance. Then we multiply the average daily balance by the daily periodic rate times the number of days in the billing cycle. The Daily Periodic Rate is figured by dividing the Annual Percentage Rate by the number of days in a year (365/366 days).

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

Key Credit Research Department
P.O. Box 94518
Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

## BALANCING YOUR ACCOUNT

Please examine your statement and canceled checks upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

### INSTRUCTIONS

❶ **Verify and check off in your check register** each deposit, check or other transaction shown on this statement.

❷ **Enter into your check register and SUBTRACT:**
- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

❸ **Enter into your check register and ADD:**
- Deposits or other credits shown on your statement that you have *not* already entered.
- The "Interest earned" shown on your statement, if any.

❹ List from your check register any checks or other deductions that are *not* shown on your statement.

| Check # or Date | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL ↓ | $ |

❺ List any deposits from your check register that are *not* shown on your statement.

| Date | Amount |
|---|---|
| | |
| | |
| | |
| TOTAL ↓ | $ |

❻ Enter ending balance shown on your statement.

$

❼ Add 5 and 6 and enter total here.

$

❽ Enter total from 4.

$

❾ Subtract 8 from 7 and enter difference here.

$

This amount should agree with your check register balance.

KeyBank
P.O. Box 22114
Albany, NY 12201-2114

2
FLORIDA TRAVEL GROUP LLC
7611 S ORANGE BLOSSOM TRL
SUITE 142
ORLANDO FL 32809-8524

T 0348 00000 R EM T1

CARRISW3    32809



April 2007
$14,037.°°
in Deposits

PRESORTED
FIRST CLASS

MAY 30 '07

U.S. POSTAGE
0.30